Kenneth R. Puhala
SCHNADER HARRISON SEGAL & LEWIS LLP
140 Broadway, Suite 3100
New York, NY 10005-1101
Phone: (212) 973-8000
Fax: (212) 972-8798
*Attorneys for Andrew Christopher Beckham, as Foreign Representative*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 15 |
| PT BUMI RESOURCES TBK, | Case No. _____ |
| Debtor in a Foreign Proceeding. | |

---

## VERIFIED PETITION OF ANDREW CHRISTOPHER BECKHAM, AS FOREIGN REPRESENTATIVE OF THE ABOVE-CAPTIONED DEBTOR IN A FOREIGN PROCEEDING, FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING AND (II) RECOGNITION AND ENFORCEMENT OF INDONESIAN PKPU PLAN

Petitioner, Andrew Christopher Beckham, the duly authorized foreign representative ("Beckham" or the "Foreign Representative") of PT Bumi Resources Tbk ("Bumi"), the above-captioned debtor in a foreign proceeding, by and through his undersigned counsel, respectfully submits this verified petition (the "Verified Petition") for an order pursuant to Sections 1515 and 1517 of title 11 of the United States Code (the "Bankruptcy Code"), recognizing the proceeding pending in the Central Jakarta Commercial Court (the "Indonesian Court") pursuant to Law No. 37 of 2004 on Bankruptcy and Suspension of Debt Payment Obligations (the "Indonesian Proceeding") with respect to Bumi, as a foreign main proceeding and recognizing and enforcing Bumi's restructuring plan (the "PKPU Plan") which received the overwhelming support of Bumi's creditors and was approved by the Indonesian Court (the

PHDATA 5864001_4

"Petition"). In support of the Verified Petition, the Foreign Representative incorporates herein by reference (a) the Declaration of Andrew Christopher Beckham in Support of (I) Verified Petition Under Chapter 15; and (II) Application for Recognition of a Foreign Main Proceeding and Enforcement of Indonesian PKPU Plan (the "Beckham Declaration"); (b) the Memorandum of Law of Andrew Christopher Beckham, As Foreign Representative of the Above-Captioned Debtor in a Foreign Proceeding, in Support of Verified Petition for (I) Recognition of Foreign Main Proceeding and (II) Recognition and Enforcement of Indonesian PKPU Plan (the "Memorandum of Law"), and (c) the Declaration of Gregorius Petrus Aji Wijaya, of Aji Wijaya & Co., which acts as Indonesian counsel to Bumi in the Indonesian Proceeding (the "Wijaya Declaration"), and respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This case has been properly commenced pursuant to Sections 1504, 1509 and 1515 of the Bankruptcy Code by the filing of a petition for recognition of the Foreign Proceeding under Section 1515 of the Bankruptcy Code. Venue is proper in this district pursuant to 28 U.S.C. § 1410.

## FACTUAL SUMMARY

**A.    Background**

2. Bumi is in the business of the mining and export of thermal coal and is one of the largest exporters of thermal coal in the world.

3. Bumi has an interest, either directly or otherwise, in a total of 58 entities incorporated in various jurisdictions (the "Bumi Group").

4.  In recent years, the financial condition of Bumi deteriorated. This was directly attributable to the decrease in the global demand for coal, which resulted in a precipitous drop in coal prices.

5.  Bumi's revenue and EBITDA declined substantially as a result of the drastic reduction in coal prices.

6.  Although Bumi took steps to reduce its mining costs, these savings were not sufficient to compensate for the decline in the selling price of thermal coal.

7.  As of June 30, 2014, Bumi Resources' net cash flow had declined into a negative position.

8.  Consequently, Bumi commenced a restructuring process, preparing a restructuring framework and engaging in negotiations with numerous creditors, seeking to renegotiate debt repayments.

### B. The Financing Subsidiaries' Singapore Proceedings and Chapter 15 Cases

9.  Bumi Investment Pte. Ltd. ("Bumi Investment"), Bumi Capital Pte. Ltd ("Bumi Capital") and Enercoal Resources Pte. Ltd. ("Enercoal") (together, the "Financing Subsidiaries") are wholly-owned subsidiaries of Bumi and were incorporated under Singapore law. The Financing Subsidiaries are special purpose vehicles incorporated by Bumi to raise funds on Bumi's behalf.

10. Bumi Investment entered into an indenture dated October 6, 2010, pursuant to which Bumi Investment issued $700 million in 10.75% guaranteed senior secured notes due 2017 (the "2017 Notes"). The Bank of New York Mellon is the trustee under the indenture for the 2017 Notes ( the "2017 Notes Indenture"). Bumi Investment's obligations under the 2017 Notes are guaranteed by, amongst others, Bumi.

3

11. Bumi Investment and Bumi Resources were unable to make the semi-annual interest payment due on October 6, 2014, under the 2017 Notes.

12. By letter dated November 14, 2014, The Bank of New York Mellon, as indenture trustee, declared a default under the 2017 Notes.

13. Bumi Capital entered into an indenture dated November 13, 2009, pursuant to which it issued $300 million in 12% guaranteed senior secured notes due 2016 (the "2016 Notes"). The Bank of New York Mellon is the trustee under the indenture for the 2016 Notes (the "2016 Notes Indenture"). Bumi Capital's obligations under the 2016 Notes are guaranteed by, amongst others, Bumi.

14. Bumi Capital and Bumi were unable to make the semi-annual interest payment due on November 10, 2014, under the 2016 Notes.

15. By letter dated November 14, 2014, The Bank of New York Mellon, as indenture trustee, declared a default under the 2016 Notes.

16. On August 5, 2009, Enercoal entered into a trust deed (as subsequently amended the "Trust Deed") pursuant to which Enercoal issued $375 million in bonds bearing a coupon rate of 9.25% on the principal amount *per annum*, payable in arrears on a monthly basis, and fully redeemable on August 5, 2014 (the "Convertible Bonds"). The original trustee under the Trust Deed was The Bank of New York Mellon, which was replaced by Madison Pacific Trust Limited on or about March 1, 2016. Enercoal's obligations under the Convertible Bonds are guaranteed by Bumi.

17. Enercoal and Bumi were unable to redeem the Convertible Bonds as required by the Trust Deed and were unable to make the monthly coupon payments due under the Convertible Bonds for the months of September, October and November 2014.

18. In order to prevent recovery or enforcement efforts by creditors that would jeopardize the Bumi Group's restructuring efforts, on November 24, 2014, the Financing Subsidiaries initiated proceedings in the High Court of the Republic of Singapore (the "Singapore Court") pursuant to Section 210(10) of the Companies Act (Cap. 50) for an order imposing a moratorium on collection activity against the Financing Subsidiaries and Bumi (collectively, the "Singapore Proceedings").

19. On November 24, 2014, the Singapore Court entered orders in the Singapore Proceeding prohibiting for a period of six months the commencement or continuation of any action by any creditors against the Financing Subsidiaries and guarantors of the debts of the Financing Subsidiaries, including Bumi.

20. On December 1, 2014, the Financing Subsidiaries filed petitions under Chapter 15 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which are jointly administered under Case No. 14-13296.

21. On January 22, 2015, the Bankruptcy Court entered an order recognizing the Singapore Proceedings as foreign main proceedings pursuant to 11 U.S.C. §§ 1502(4) and 1517(b)(1) and Andrew Christopher Beckham as the foreign representative of the Financing Subsidiaries. [Docket No. 24].

22. On April 30, 2015, the Singapore Court issued orders, in respect of Bumi Investment and Bumi Capital, providing that the moratorium would terminate in the event that any bankruptcy, insolvency, reorganization or suspension of payment proceeding in respect of any member of the Bumi Group was commenced in Indonesia.

23. On May 21, 2015, the Singapore Court issued orders extending the moratorium for a period of five months, until October 24, 2015.

24. The moratorium expired and the Singapore Proceeding was discontinued.

25. On May 13, 2016, the Financing Subsidiaries filed a status report in their Chapter 15 cases stating that since the grounds for recognition ceased to exist, the cases could be closed pursuant to Sections 350(a) and 1517(d) of the Bankruptcy Code and Local Rule 5009-2 [Docket No. 37].

C. **Bumi's Successful Restructuring of More Than $4.2 Billion of Debt in the Indonesian Proceeding**

26. On April 6, 2016, one of Bumi's creditors, Castleford Investment Holdings, Ltd. ("Castleford"), filed a PKPU application against Bumi (the "Indonesian Proceeding") in the Indonesian Court.

27. A PKPU is a court-enforced suspension of payments process which is designed to provide a debtor a definite period of time to restructure its debt and reorganize its affairs pursuant to a composition plan with its creditors.[1]

28. PKPU proceedings are governed by Law No. 37 of 2004 on Bankruptcy and Suspension of Debt Payment Obligations.

29. On April 25, 2016, the Indonesian Court accepted Castleford's PKPU petition and granted a temporary moratorium on payments for 45 days, during which Bumi was required to prepare a restructuring plan and seek agreement of its creditors.

30. Extensions of time beyond the original 45 days are common for larger corporate groups and the Indonesian Court approved several extensions of the time for Bumi to establish a workable restructuring plan and obtain the agreement of its creditors in respect of its plan.

---

[1] PKPU is an abbreviation for Penundaan Kewajiban Pembayaran Utang, an Indonesian Phrase meaning "suspension of payments."

31. On November 9, 2016, the requisite majority of Bumi's creditors, including noteholders of the 2016 Notes and the 2017 Notes, voted to approve the PKPU Plan in the Indonesian Proceeding.

32. For Bumi's restructuring plan to be accepted, the proposal was required to be approved by the requisite majority of creditors attending and voting at the meeting at which the plan was considered. The requisite majority of creditors are a majority in number and two-thirds in value of holders of each class of debt who attend and vote at the meeting.

33. The PKPU Plan received overwhelming support from its creditors. A total of 98 creditors representing 4,772,103 voting rights or 99.84% in value of Bumi's verified secured creditors, and 142 creditors representing 3,926,955 voting rights or 100% in value of Bumi's verified unsecured creditors, voted in favor of the PKPU Plan.

34. On November 28, 2016, the Indonesian Court approved the PKPU Plan.

35. The PKPU Plan restructures secured obligations, including the obligations of the Financing Subsidiaries that are guaranteed by Bumi, totaling in excess of $4.2 billion in principal and interest, exclusive of default and/or penalty fees.

36. The in excess of $1.32 billion in principal and interest due under Bumi's secured term loan with County Forest Limited, a wholly-owned subsidiary of China Investment Corporation (together, "CIC") will be repaid as follows: (a) 32.24% of the Total CIC Debt[2] shall be replaced with a New Senior Secured Facility and/or New 2021 Notes, as CIC may elect in its sole discretion; (b) $150 million shall be converted into approximately 6,173,616,942 shares of Bumi allocated under the rights issue conducted on September 5, 2014; (c) 45.73% of the Total

---

[2] Capitalized terms not defined herein shall have the same meaning as in the Beckham Declaration.

CIC Debt shall be converted into Bumi shares based on a valuation of $4.6 billion; (d) 10.73% of the Total CIC Debt shall be replaced with a 7-year Mandatory Convertible Bond; and (e) CIC shall receive its proportional share of $100 million in tradeable Contingent Value Rights issued to New Senior Secured Creditors under the PKPU Plan.

37. The in excess of $600 million in principal and interest due under Bumi's term loan with China Development Bank Corporation ("CDB") shall be satisfied as follows: (a) 32.24% of the Total CDB Debt shall be replaced with a New Senior Secured Facility and/or New 2021 Notes, as CDB may elect in its sole discretion; (b) 67.76% of the Total CDB Debt shall be replaced with a new Tranche C Facility; and (c) CDB shall receive its proportional share of $100 million in tradeable Contingent Value Rights issued to New Senior Secured Creditors under the PKPU Plan.

38. The approximately $51 million claimed due with respect to Castleford's loan to Bumi shall be converted into Bumi shares based upon a $4.6 billion valuation.

39. Under the PKPU Plan, there will be a CB Exchange Offer made to the holders of the approximately $434 million in principal and interest due under the Convertible Bonds pursuant to which: (a) 30% of the Convertible Bond Debt shall be converted to Bumi shares at a valuation of $4.6 billion; and (b) 70% of the Convertible Bond Debt shall be replaced with a 7-year Mandatory Convertible Bond.

40. Pursuant to the PKPU Plan, there will be an RD Exchange Offer made to the holders of the in excess of $1.79 billion in principal and interest due under the Remaining Debt (which includes the 2016 Notes and 2017 Notes) pursuant to which: (a) 57.03% of the Remaining Debt shall be converted into shares in Bumi at a valuation of $4.6 billion; (b) 32.24% of the remaining Debt will be replaced with a New Senior Secured Facility and/or New 2021

PHDATA 5864001_4

Notes; (c) 10.73% of the Remaining Debt shall be replaced with a 7-year Mandatory Convertible Bond; and (d) holders of the principal and interest due under the Remaining Debt will receive a proportional share of $100 million in tradeable Contingent Value Rights issued to New Senior Secured Creditors under the PKPU Plan.

41. Under the PKPU Plan, Bumi's unsecured creditors shall receive Bumi shares based upon a $4.6 billion valuation. The total amount of unsecured debt which will be converted to Bumi equity shall not exceed $200 million.

42. The recoveries of creditors under the approved PKPU Plan are far greater than they would be in a liquidation of Bumi.

43. The Foreign Representative has filed this Chapter 15 bankruptcy case to obtain recognition of the Indonesian Proceeding as a foreign main proceeding and recognition and enforcement of Bumi's PKPU Plan in the United States.

### RELIEF REQUESTED AND BASIS THEREFOR

44. The Foreign Representative seeks entry of an order, substantially in the form attached hereto as **Exhibit A**, recognizing the Indonesian Proceeding as a foreign main proceeding and recognizing and enforcing Bumi's PKPU Plan.

45. "Chapter 15 contemplates a short and relatively simple petition for recognition." *In re Millenium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 69 (Bankr. S.D.N.Y. 2011).

46. "An order recognizing a foreign proceeding shall be entered if the proceeding is a foreign main or non-main proceeding, the foreign representative is a person or body and the petition meets the requirements of Section 1515 concerning the petition and accompanying

documents." *In re Ashapura Minechem Ltd.*, 2011 Bankr. LEXIS 4617 at *7 (Bankr. S.D.N.Y. 2011).

### A. The Indonesian Proceeding Is a "Foreign Proceeding" Under Section 101(23) of the Bankruptcy Code

47. Section 101(23) of the Bankruptcy Code provides as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

48. The Indonesian Proceeding was commenced pursuant to the Law No. 37 of 2004 on Bankruptcy and Suspension of Debt Payment Obligations (the "Indonesian Insolvency Law"). The Indonesian Insolvency Law contains several sections, one of which covers the declaration of the debtor's bankruptcy and the liquidation of the debtor's assets for the benefit of creditors. Another section of the Indonesian Insolvency Law governs PKPU proceedings (the "PKPU Law"). Indonesian PKPU proceedings are intended to achieve an amicable settlement with the debtor's creditors and avoid a declaration of bankruptcy and liquidation of the debtor. It is a process under which the debtor proposes to its creditors a composition plan to restructure its debts and reorganize its business operations. Matters under the Indonesian Insolvency Law, including PKPU proceedings, are administered in the Indonesian Court. Cases in the Indonesian Court are adjudicated by a panel of three judges. In PKPU matters, a supervising judge is appointed to oversee the proceeding.

49. Restructuring plans pursuant to the PKPU Law, like Chapter 11 proceedings under the Bankruptcy Code, provide mechanisms for the orderly reorganization of the debtor.

50.  Accordingly, the Indonesian Proceeding is a judicial proceeding under Indonesian law relating to insolvency or adjustment of debt in which the assets and affairs of Bumi are subject to control and supervision by a foreign court, for the purpose of reorganization or liquidation. As such, this Chapter 15 case concerns a "foreign proceeding" within the meaning of Section 101(23) of the Bankruptcy Code.

**B.   This Chapter 15 Case Was Commenced by a Duly Authorized Foreign Representative**

51.  The Foreign Representative is duly authorized to serve in this capacity in this Chapter 15 case. The term "foreign representative" is defined under Section 101(24) of the Bankruptcy Code to mean:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

52.  The board of directors of Bumi has appointed Andrew Christopher Beckham as the Foreign Representative for Bumi in connection with this Chapter 15 case.

53.  Accordingly, Andrew Christopher Beckham is a duly appointed foreign representative within the meaning of 11 U.S.C. § 101(24).

**C.   The Foreign Proceeding Should Be Recognized as a Foreign Main Proceeding**

54.  Section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding for which recognition is sought must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests.

11

55. Section 1516(c) of the Bankruptcy Code provides further that, in the absence of evidence to the contrary, a debtor's registered office is presumed to be the center of the debtor's main interests.

56. Bumi is incorporated under Indonesian law and has its registered office in the Republic of Indonesia.

57. Consequently, Bumi has its "center of main interests" in the Republic of Indonesia. Therefore, the Indonesian Proceeding should be recognized as a "foreign main proceeding" pursuant to §§ 1502(4), 1516(c) and 1517(b)(1) of the Bankruptcy Code.

### D. The Chapter 15 Case Was Properly Commenced

58. Bumi's Chapter 15 case was duly and properly commenced by filing the Chapter 15 petition and the Verified Petition accompanied by all fees, documents and information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), including: (a) a corporate ownership statements containing the information described in Bankruptcy Rule 7007.1; (b) a List of Foreign Proceeding Administrators, Litigation Parties and Entities Against Whom 11 U.S.C. § 1519 Provisional Relief is Sought; (c) a statements identifying all foreign proceedings with respect to Bumi that are known to the Foreign Representative; (d) a certified copy of the PKPU Order; and (e) an English translation of the PKPU Order.

59. Having filed the above-referenced documents and because this Court is entitled to presume the authenticity of such documents filed in connection with the Chapter 15 petition and Verified Petition under Section 1516(b) of the Bankruptcy Code, the requirements of Section 1515 of the Bankruptcy Code have been satisfied.

60. Based on the foregoing, the Foreign Representative respectfully requests that this Court enter an order recognizing the Indonesian Proceeding as a foreign main proceeding pursuant to Section 1517 of the Bankruptcy Code.

### E. The Court Should Recognize and Give Full Force and Effect to the Foreign Debtor's PKPU Plan

61. Recognition and enforcement of the PKPU Plan in the United States is warranted under both Sections 1521 and 1507 of the Bankruptcy Code, as well as under the general principles of comity undergirding chapter 15.

62. Section 1521(a) of the Bankruptcy Code provides that upon recognition, the Bankruptcy Court may grant "any appropriate relief" that is "necessary to effectuate the purpose of [Chapter 15] and to protect the assets of the debtor or the interests of the creditors."

63. Further, under Section 1507 of the Bankruptcy Code, once recognition of a foreign proceeding is granted, courts "may provide additional assistance to a foreign representative under [title 11] or under other laws of the United States . . . consistent with the principles of comity . . . ." 11 U.S.C. § 1507 (a) and (b).

64. Courts within the Second Circuit have long emphasized the particular importance of granting comity to foreign restructurings. *See CT Inv. Mgmt. Co., LLC v. Cozumel Caribe, S.A. de C.V. (In re Cozumel Caribe)*, 482 B.R. 96, 115 (Bankr. S.D.N.Y. 2012) (granting comity to Mexican restructuring proceeding).

65. The extension of comity is warranted so long as the foreign restructuring process is procedurally fair and does not violate the public policies of the United States. *Id.* at 114 (citing *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 412, 424 (2d Cir. 2005) (granting comity to Mexican restructuring proceeding)).

66. Importantly, the "relief granted in the foreign proceeding and the relief available in a U.S. proceeding need not be identical" to warrant extension of comity. *In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (granting recognition to Canadian proceeding and enforcing restructuring plan approved by Canadian court order).

67. Recognition and enforcement of the PKPU Plan is warranted because the Indonesian Proceeding implementing the PKPU Plan was procedurally fair and furthers the public policies underlying the United States Bankruptcy Code.

68. The PKPU process commences with the filing of PKPU application. If the application is submitted by a creditor, as in the case of Bumi, Article 225, paragraphs 3 and 4 of the PKPU Law stipulates that within 20 days of that filing, the court will issue a temporary PKPU order, calling for a hearing to be held within 45 days.

69. Once the temporary PKPU order is entered by the court, public notice is provided, which includes notice of the initial schedule for the proceedings and an invitation for creditors to participate in the proceedings (PKPU Law, Article 226).

70. Once a proposed plan is submitted, creditors are entitled to vote to accept or reject the plan.

71. If the plan is accepted by the required majority of the creditors, under Article 281 of the PKPU Law, ratification of the court is required. Pursuant to Article 285 of the PKPU Law, the court can reject a plan accepted by the requisite majority of creditors if, *inter alia*, the value of the debtor's assets is far greater than the amount agreed upon in the amicable settlement or the fees and costs of the administrators have not be paid. If the plan is rejected by the court, the debtor will be declared bankrupt by the court.

14

72. Ratification by the court may be appealed to the Indonesian Supreme Court, providing an additional layer of procedural protections to creditors.

73. Thus, the PKPU proceeding provides creditors with both ample notice and numerous opportunities to be heard and raise objections in regards to implementation of the restructuring plan.

74. Further, the PKPU process does not conflict with the public policies of the United States, but rather, contains similar protections to those available under Chapter 11 of the Bankruptcy Code.

75. For instance, as in a Chapter 11 case, the PKPU proceeding is subject to court supervision.

76. Further, Article 242 of the PKPU Law provides for a stay of all collection efforts and enforcement actions against the debtor and, under Article 246 a secured creditor's right to enforce its security interest is likewise stayed during the PKPU process.

77. Additionally, during the PKPU proceeding, the debtor is barred from selling assets or borrowing money without the approval of the independent administrators appointed by the Indonesian Court. Loans can only be approved by administrators if they are for purposes of increasing the value of the debtor's assets (PKPU Law, Article 240, paragraph 4). If the borrowing requires the posting of collateral, the loan must be approved by the supervising judge (PKPU Law, Article 240, paragraph 5).

78. Finally, a debtor's failure to comply with the terms of an approved restructuring plan may result in an attempt by the debtor's creditors to nullify the plan and a declaration by the Indonesian Court of the debtor as bankrupt (PKPU Law, Article 291).

79. These various procedural protections are in accord with the policy considerations underlying U.S. bankruptcy cases; namely, the need to centralize all of the debtor's assets and creditors' claims in a single forum to ensure protection of the debtor's assets and just treatment of all of the debtor's creditors. *See Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d at 424.

80. Recognition and enforcement of the PKPU Plan is appropriate because it will effectuate the purpose of Chapter 15, protect the assets of Bumi from piecemeal litigation, and ensure the just treatment of all of Bumi's creditors. *See In re Rede Energia S.A.*, 515 B.R. 69, 94 (Bankr. S.D.N.Y. 2014) (enforcing Brazilian reorganization plan under Sections 1521 and 1507).

81. Recognition and enforcement of the PKPU Plan will ensure that Bumi's assets receive continuing protection from collection or enforcement efforts in the United States. Such protection will further safeguard the just treatment of Bumi's creditors by preventing recalcitrant creditors, if any, from seeking relief that is inconsistent with the terms of the PKPU Plan.

82. Under Indonesian law, for Bumi's PKPU Plan to be accepted, the proposal was required to be approved by the requisite majority of creditors attending and voting at the meeting at which the plan was considered. The requisite majority of creditors are a majority in number and two-thirds in value of holders of each class of debt who attend and vote at the meeting.

83. On November 9, 2016, the requisite majority of Bumi's creditors, including noteholders of the 2016 Notes and the 2017 Notes, voted overwhelmingly to approve Bumi's PKPU Plan in the Indonesian Proceeding.

84. That the PKPU Plan was overwhelmingly approved by Bumi's creditors evidences that the PKPU Plan provides a fair distribution to Bumi's creditors.

85. Through the PKPU Plan, Bumi will successfully restructure secured obligations totaling in excess of $4 billion in principal and interest, including the obligations of the Financing Subsidiaries that are guaranteed by Bumi, exclusive of default and/or penalty fees.

86. The recoveries of creditors under the approved PKPU Plan are far greater than they would be in a liquidation of Bumi. Giving full force and effect to the PKPU Plan will ensure successful implementation of the plan.

87. Accordingly, to ensure that Bumi's reorganization is not jeopardized and the benefits of Bumi's restructuring are fully realized, the Foreign Debtor requests that this Court enter an order recognizing and giving full force and effect to the PKPU Plan.

### NOTICE

88. The Foreign Representative proposes to serve the "Notice of Filing and Hearing on Petition Under Chapter 15 of the United States Bankruptcy Code" (the "Chapter 15 Notice") by mail, within three business days of entry of the "Order Scheduling Hearing and Specifying the Form and Manner of Service of Notice," proposed versions of which have been filed contemporaneously herewith, upon all persons or bodies authorized to administer foreign proceedings of Bumi, all entities against whom provisional relief is being sought under Section 1519 of the Bankruptcy Code, all parties to litigation pending in the United States in which Bumi was a party at the time of the filing of the Chapter 15 Petition, the United States Trustee and such other entities as this Court may direct.

89. The Foreign Representative further proposes to provide copies of the Chapter 15 Petition, this Verified Petition, the Beckham Declaration, the Wijaya Declaration, the Memorandum of Law, and the Application and the Order Granting Provisional Relief (collectively, the "Supporting Documents"), upon request by any party in interest to Schnader

Harrison Segal & Lewis LLP, 140 Broadway, Suite 3100, New York, NY 10005-1101 (Attn: Kenneth R. Puhala).

90. The Foreign Representative believes that such notice and service constitutes reasonable and proper notice under the circumstances, and that no other or further notice is necessary or appropriate.

## NO PRIOR REQUEST

91. No previous request for the relief requested herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) recognizing the Indonesian Proceeding as a foreign main proceeding, (ii) recognizing and enforcing the Indonesian PKPU Plan, and (iii) granting the Foreign Representative such other and further relief as the Court deems just and proper.

SCHNADER HARRISON SEGAL & LEWIS LLP

By:  /s/ Kenneth R. Puhala
    Kenneth R. Puhala
    140 Broadway, Suite 3100
    New York, NY 10005-1101
    Phone: (212) 973-8000
    Fax: (212) 972-8798
    kpuhala@schnader.com

- and -

Richard A. Barkasy *(pro hac vice* pending*)*
Daniel M. Pereira *(pro hac vice* pending*)*

                                        1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Phone: (215) 751-2000
Fax: (215) 751-2205
rbarkasy@schnader.com
dpereira@schnader.com

*Attorneys for Andrew Christopher Beckham,*
Dated: January 13, 2017        *as Foreign Representative*

# **VERIFICATION**

Andrew Christopher Beckham, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States of America as follows:

I am the duly appointed foreign representative for PT Bumi Resources Tbk and have full authority to verify the foregoing Verified Petition.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 13th, 2017,
in the Republic of Indonesia.

_____
Andrew Christopher Beckham
Foreign Representative

PHDATA 5864001_4